# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

DARRYL LAMONT JEFFERSON, #1050715,

        Petitioner,

v.
                                          ACTION NO.  2:16cv572

HAROLD W. CLARKE,
Director of the Virginia
Department of Corrections,

        Respondent.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

      This matter is before the Court on Darryl Lamont Jefferson's *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 and respondent's motion to dismiss.  This matter was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia.  For the following reasons, the Court RECOMMENDS that respondent's motion to dismiss, ECF No. 12, be GRANTED, and the petition for a writ of habeas corpus, ECF No. 1, as amended, ECF No. 22, be DENIED and DISMISSED WITH PREJUDICE.

# I. STATEMENT OF THE CASE

**A.     Background**

**1.     Jefferson's Offenses and Sentence**

On August 20, 2012, in the Circuit Court of the City of Richmond, a jury found Darryl

Lamont Jefferson ("Jefferson") guilty of two counts of first degree murder and two counts of use

of a firearm in the commission of a felony.  *Commonwealth v. Jefferson*, Nos. CR12-F-3321

through -3324 (Va. Cir. Ct. Aug. 28, 2012).

According to the Court of Appeals of Virginia, the evidence presented at Jefferson's trial,

when viewed in the light most favorable to the Commonwealth, established the following:

> [O]n April 18, 2012, Ahmad Phillips and his girlfriend Lauren Bowles confronted
> their neighbor, Randy Trent, regarding the behavior of Trent's dog.  An angry
> crowd soon formed in the hallway of the apartment complex, and Ahmad Phillips
> and Bowles retreated to their apartment where Bowles called the police.
>
> Officer Scott Campbell and other officers responded to the call and encountered
> approximately fifty people outside the apartment building yelling at each other.
> The crowd dispersed, and the police left. Afterwards, Trent and two others began
> kicking the door to the apartment Ahmad shared with Bowles.   The police
> returned, warned the residents to remain in their apartments, and again left the
> scene.  When a crowd again formed outside the apartment, Ahmad Phillips called
> his brother Ahkeem Phillips for assistance.  Bowles testified that when Ahkeem
> arrived, she saw a gun in the waistband of his pants.  She also testified there was
> not a gun in her apartment and during the six years she was with Ahmad, she had
> never seen him with a gun.  Soon after Ahkeem's arrival, the two men left the
> apartment.  Bowles explained Ahkeem still carried his gun but that Ahmad did not
> have one.
>
> Minutes after they left the apartment, Bowles heard approximately eighteen
> gunshots.  She again called for emergency help.  She looked out her window and
> saw Trent and another man running.  She left her apartment and found Ahmad
> and Ahkeem on the floor in the apartment building lobby.
>
> [Officer] Campbell returned to the apartment complex and observed the brothers,
> both dead from gunshot wounds.  He located a firearm beneath Ahkeem's body.
> The gun was fully loaded and had not been fired.

The following day, Trent gave a statement to the police admitting his involvement in the crimes. He provided the police with the location of the weapon he used and implicated appellant as his associate.

Following appellant's arrest approximately a month after the shootings, Detective Jamie Bayne interviewed appellant. In his statement, appellant explained Trent called him after the confrontation with Ahmad. Appellant came to Trent's residence intending to escort Trent from the scene. He claimed that as he and Trent were leaving the building, Ahmad and Ahkeem confronted them and that Ahmad hit him in the head with a gun. Appellant reported that the gun fell to the ground and that he and Ahmad struggled to gain control of the weapon. He claimed other people were firing weapons while he struggled with Ahmad. Appellant stated Ahmad instructed Ahkeem to shoot him and that he feared the brothers would kill him and Trent. Appellant told Bayne that when Ahmad tried to retrieve Ahkeem's gun, he started shooting at both men. Appellant and Trent then fled the scene. Appellant stated he used Ahmad's gun and left it near a basketball court as he left.

The police recovered cartridges, bullets, and bullet fragments at the scene—both inside the lobby and immediately outside the building. Forensic evidence established that seventeen cartridge cases found outside the building were fired from Trent's gun. One cartridge found outside and the six cartridges found inside were all fired from the same gun. That gun was a separate weapon than the one recovered from Trent. The cartridges were .40 caliber. No other cartridges were found inside. As noted above, the gun Ahkeem carried had not been fired and was of a different caliber than any of the cartridges found at the scene.

Both victims had been shot multiple times—a total of thirteen shots. Both had received incapacitating shots to their legs, and both sustained lethal gunshots to their heads. The evidence supports the theory that the brothers received some of their wounds outside the building and received the others after retreating inside. Although the medical examiner was unable to conclude in which order the men received their injuries, she explained that the gunshots to their heads would have caused immediate incapacitation and unconsciousness.

*Jefferson v. Commonwealth*, Record No. 0745-13-2 (Va. Ct. App. Dec. 5, 2013).

After his trial, but prior to his sentencing, Jefferson moved to reconsider, to vacate, or to set aside his convictions. *Commonwealth v. Jefferson*, Nos. CR12-F-3321 through -3324 (Va. Cir. Ct. Apr. 8, 2013), Sentencing Tr. 4–23. One basis for these motions was the assertion that Jefferson's counsel was ineffective for failing to have his codefendant Randy Trent testify during Jefferson's trial. *Id.* at 11–12. Jefferson provided Trent's affidavit, dated November 28, 2012,

3

wherein Trent states that: he called Jefferson the night of the murders asking Jefferson to pick him up due to threats from the victims; as he and Jefferson left the apartment building, Ahmad Phillips hit Jefferson in the back of the head with a gun and they fell to the ground fighting; Ahkeem pulled his weapon on Trent and Trent pulled and fired his weapon; Ahmad ended up on top of Jefferson stating, "shoot him shoot him;" Jefferson acted in self-defense; and Trent would have testified to this at Jefferson's trial, but was never contacted by Jefferson's counsel. *Commonwealth v. Jefferson*, Nos. CR12-F-3321 through -3324 (Va. Cir. Ct. Apr. 8, 2013) (Defense Exhibit at 324–25). The prosecutor responded that Jefferson's claim that trial counsel was ineffective for failing to have Trent testify was speculative, stating, "Mr. Trent not only cooperated with the Commonwealth from the very minute the bodies hit the ground but was prepared to testify for me if I lost my motion to suppress." Sentencing Tr. 13. The trial court heard argument and denied the motions on April 8, 2013. *Id.* at 23.

After ruling on these motions, the trial court sentenced Jefferson, in accordance with the jury's recommendation, to 46 years in prison. *Commonwealth v. Jefferson*, Nos. CR12-F-3321 through -3324 (Va. Cir. Ct. Apr. 24, 2013).

### 2.    Jefferson's Direct Appeal and State Collateral Review

The Court of Appeals of Virginia denied Jefferson's appeal in a one-judge order entered December 5, 2013, and in a three-judge panel order entered March 14, 2014. *Jefferson v. Commonwealth*, Record No. 0745-13-2 (Va. Ct. App.). Jefferson appealed to the Supreme Court of Virginia arguing that (1) "[t]he evidence supported Jefferson's claim of justifiable self defense as a matter of law," (2) "[t]he evidence failed to establish Jefferson acted maliciously," and (3) "[t]he evidence failed to establish Jefferson acted willfully and with premeditation and deliberation." *Jefferson v. Commonwealth*, Record No. 140569 (Va. Apr. 10, 2014). The

Supreme Court of Virginia refused the appeal on November 13, 2014.   *Jefferson v. Commonwealth*, Record No. 140569 (Va. Nov. 13, 2014).

Jefferson filed a petition for a writ of habeas corpus with the Circuit Court of the City of Richmond on July 16, 2013, claiming he was denied effective assistance of counsel due to counsel's failure to call Randy Trent to testify, failure to investigate any of the witnesses Jefferson gave him, and failure to inform Jefferson that his license was being suspended for malpractice reasons.[1] *Jefferson v. Dir., Dept. of Corr.*, Case No. CL13-3143[2] (Va. Cir. Ct. July 16, 2013).   The circuit court dismissed Jefferson's first state habeas petition on November 7, 2014, while his direct appeal was pending, finding that "[n]one of Jefferson's ineffective counsel allegations satisfy the 'performance' or the 'prejudice' standard of review under *Strickland v. Washington*, 466 U.S. 668 (1984.)" *Jefferson v. Dir., Dept. of Corr.*, Case No. CL13-3143, at 4 (Va. Cir. Ct. Nov. 7, 2014).   Jefferson did not appeal the decision to the Supreme Court of Virginia.

On July 24, 2015, Jefferson signed a second petition for a writ of habeas corpus that he filed with the Circuit Court of the City of Richmond on July 30, 2015, asserting four claims of ineffective assistance of counsel and a claim of insufficiency of the evidence. *Jefferson v. Dir., Dept. of Corr.*, No. CL15-3079-1 (Va. Cir. Ct. July 30, 2015).   On December 3, 2015, the petition was denied and dismissed as a successive petition barred by Virginia Code § 8.01-

---

[1] The circuit court indicated that defense counsel's license was suspended for 60 days "following Jefferson's trial in August 2012." *Jefferson v. Dir., Dept. of Corr.*, Case No. CL13-3143, at 7 (Va. Cir. Ct. Nov. 7, 2014).

[2] The state record forwarded by the Circuit Court of the City of Richmond identifies Jefferson's first state habeas petition by two case numbers, Case No. CL13-3143 and Case No. CL13-3143-**1**.

654(B)(2). *Jefferson v. Dir., Dept. of Corr.*, No. CL15-3079-1, at 3–4 (Va. Cir. Ct. Dec. 3, 2015).

The circuit court found in the alternative that Jefferson's ineffective assistance of counsel claims (claims a through d) failed to "satisfy the 'performance' or the 'prejudice' standard of review under *Strickland v. Washington*, 466 U.S. 668 (1984)," his sufficiency of the evidence claim (claim e) was a "non-jurisdictional issue which has been raised and decided against [Jefferson] on direct appeal" that "will not be considered in a habeas corpus proceeding" pursuant to *Henry v. Warden, Riverside Regional Jail*, 576 S.E.2d 495, 496 (Va. 2003), and, to the extent his sufficiency of the evidence claim was different from the claim raised on appeal, it was barred by *Slayton v. Parrigan¸* 205 S.E.2d 680, 682 (Va. 1974) (holding "[a] prisoner is not entitled to use habeas corpus to circumvent the trial and appellate process for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction."). *Id.* at 4–7.

Jefferson filed an appeal to the Supreme Court of Virginia, and the memorandum, filed February 24, 2016, listed the following five assignments of error:  (1) counsel's performance was ineffective as a conclusion of the law, (2) the prosecution withheld and suppressed exculpatory information, (3) Jefferson was entitled to an evidentiary hearing, (4) the current petition for a writof habeas corpus was not successive, and (5) the prosecution offered statements as truth, denying Jefferson the opportunity to confront the witnesses to the crime. *Jefferson v. Dir., Dept. of Corr.*, Record No. 160361, at 8–9 (Va. Feb. 24, 2016).  Jefferson filed a motion to supplement the petition that the Supreme Court of Virginia granted on April 7, 2016, and a sixth assignment of error was added, (6) "[w]hether the Commonwealth of Virginia's attorney and prosecutor may vouch for the credibility of a witness."  Mot. to Suppl. filed Mar. 28, 2016; *see also Jefferson v. Dir., Dept. of Corr.*, Record No. 160361 (Va. Apr. 7, 2016).

On December 1, 2016, the Supreme Court of Virginia entered a second amended order,[3] which dismissed in part and refused in part Jefferson's appeal of the circuit court's ruling dismissing his second state habeas petition. *Jefferson v. Dir., Dept. of Corr.*, Record No. 160361 (Va. Dec. 1, 2016). The court found that three assignments of error (numbers 2, 5, and 6) did not address the circuit court's ruling that Jefferson appealed, and they were dismissed pursuant to Rule 5:17(c)(1)(iii) of the Rules of the Supreme Court of Virginia.[4] *Id.* The court refused the appeal of Jefferson's remaining assignments of error (numbers 1, 3, and 4). *Id.*

The Clerk of the Supreme Court of Virginia wrote Jefferson, on December 21, 2016, to assure Jefferson that "the Court had the correct record in front of it when it decided" his case, explaining,

---

[3] On August 2, 2016, the Supreme Court of Virginia entered an order dismissing and refusing Jefferson's second state habeas petition; however, the order referenced "Circuit Court No. CL13-3143-1" both in the heading and in the body, and the order did not address the sixth assignment of error. *Jefferson v. Dir., Dept. of Corr.*, Record No. 160361 (Va. Aug. 2, 2016). On August 31, 2016, the Supreme Court of Virginia entered an amended order that addressed the sixth assignment of error and corrected the heading to reference "Circuit Court No. CL15-3079-1," but still referenced "Circuit Court Case No. CL13-3143-1" in the body. *Jefferson v. Dir., Dept. of Corr.*, Record No. 160361 (Va. Aug. 31, 2016). On December 1, 2016, the Supreme Court of Virginia entered a second amended order[3] referencing the correct circuit court case number throughout. *Jefferson v. Dir., Dept. of Corr.*, Record No. 160361 (Va. Dec. 1, 2016).

[4] Rule 5:17(c)(1)(iii) of the Rules of the Supreme Court of Virginia provides,

> [a]n assignment of error that does not address the findings or rulings in the trial court or other tribunal from which an appeal is taken, or which merely states that the judgment or award is contrary to the law and the evidence, is not sufficient. An assignment of error in an appeal from the Court of Appeals to the Supreme Court which recites that 'the trial court erred' and specifies the errors in the trial court, will be sufficient so long as the Court of Appeals ruled upon the specific merits of the alleged trial court error and the error assigned in this Court is identical to that assigned in the Court of Appeals. If the assignments of error are insufficient, the petition for appeal shall be dismissed.

[i]n its December 3, 2015 order dismissing your habeas corpus petition, the City of Richmond Circuit Court made the record in case no. CL13-3143 part of the record in case no. CL15-3079-1. The record that the circuit court forwarded to this Court included the habeas corpus petition and all other papers filed in CL15-3079-1 *plus* the record from CL13-3143 (which also has been referenced as CL13-3143-1). This entire record—both case nos. CL15-3079-1 and CL13-3143-1—was provided to the Court when it reviewed your petition for appeal.

ECF No. 19 at 2.[5] The letter from the Clerk then addressed the mistakes made in the first two orders, and the need for the second amended order entered December 1, 2016. *Id.*

**B.      Jefferson's Federal Habeas Filing and the Claims Alleged**

Jefferson placed his federal petition for a writ of habeas corpus in the prison mailing system on September 12, 2016, and the petition was received by this Court on September 23, 2016. Pet., ECF No. 1 at 15.

Jefferson alleges he is entitled to relief under 28 U.S.C. § 2254 based on the grounds summarized below:

(1)     ineffective assistance of counsel due to counsel's failure to investigate, call Randy Trent and Lorenzo Trent as defense witnesses, object to hearsay, acquire "Brady Material," and allow Jefferson to confront the witnesses to the crime;

(2)     Commonwealth's suppressing of evidence including the identity of Shatarah Able and David Perry, witnesses to the crime;

(3)     Jefferson is entitled to an evidentiary hearing to submit new evidence previously unavailable to Jefferson;

---

[5] On December 9, 2016, Jefferson submitted a letter asking the Court to take notice of a second corrected order from the Supreme Court of Virginia dated December 1, 2016. ECF No. 18. Jefferson states that, "[p]ursuant to my description in the 'Response Brief,' the wrong case file was forwarded to the Virginia Supreme Court for review. The Court reviewed and denied an appeal from case #CL13-3143-1. However, I appealed case #CL15-3079." *Id.* The December 21, 2016 letter from the Clerk of the Supreme Court of Virginia, also submitted to this Court by Jefferson, adequately explains that the court reviewed the records from both of his habeas petitions to the Circuit Court of the City of Richmond when ruling on his petition for appeal. ECF No. 19 at 2.

(4)     the second state habeas petition was not successive, because the Circuit Court did not have jurisdiction over the habeas petition until after the direct appeal concluded;

(5)     the decision to "allow the Commonwealth to testify and offer his statements as truth" denied Jefferson the opportunity to confront witnesses of the crime in violation of the Sixth Amendment; and

(6)     the Commonwealth of Virginia and prosecutor may not vouch for the credibility of a witness.

ECF No. 1 at 5–10, 16–18.

Respondent filed a Rule 5 answer and motion to dismiss with memorandum in support on November 18, 2016. ECF Nos. 12–14. Jefferson filed an opposition to the motion to dismiss on December 5, 2016. ECF No. 17.

This Court granted Jefferson's February 24, 2017 motion to amend on March 20, 2017, ECF Nos. 22, 23, and respondent filed a reply to the amended petition on April 4, 2017. ECF No. 24. The petition for a writ of habeas corpus is ripe for consideration.

## II. ANALYSIS

### A.   Jefferson's federal habeas petition was timely filed.

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") provides a one-year statute of limitations for section 2254 petitioners. 28 U.S.C. § 2244(d)(1). The relevant portions of the statute provide that the one-year period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A), and this time period tolls when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" is pending. 28 U.S.C. § 2244(d)(2).

The Supreme Court of Virginia refused Jefferson's direct appeal on November 13, 2014. His conviction became final 90 days later, on February 11, 2015, at the expiration of his time to

file a petition for certiorari with the Supreme Court of the United States. *See* 28 U.S.C. § 2244(d)(1)(A); Sup. Ct. R. 13(1) (directing that a notice of appeal must be filed within 90 days after entry of final judgment); *Harris v. Hutchinson*, 209 F.3d 325, 328 n.l (4th Cir. 2000) (holding that a judgment became final when the 90 day period for filing a petition for certiorari with the United States Supreme Court expired). Jefferson's first habeas petition was denied while his direct review was pending, and has no effect on his federal limitations period. Consequently, Jefferson's one-year federal limitations period began to run when his convictions became final on February 11, 2015.

Jefferson's limitations period was tolled 163 days later, on July 24, 2015, when Jefferson filed his second state habeas petition. Respondent argues that this second petition, which was denied as successive, was not "properly filed" for purposes of tolling under section 2244(d)(2). ECF No. 14 at 7–8. The Court disagrees. Courts are split on what constitutes a "properly filed" petition that tolls the statute of limitations under section 2244(d)(2). *See Patterson v. Dir., Va. Dept. of Corr.*, 36 F. Supp. 2d 317, 319–20 (E.D. Va. 1999). The majority view, which the Court finds persuasive, holds that a properly filed petition is "'one submitted according to the state's procedural requirements, such as rules governing time and place of filing,' . . . without regard to the merits of the petition." *Id.* at 320 (citing *Lovasz v. Vaughn*, 134 F.3d 146, 147 (3d Cir. 1998)). Virginia Code § 8.01-654(B)(2) is not an absolute bar to all successive petitions, but "procedurally bars petitioners 'from raising any claim in a successive petition if the facts as to that claim were either known or available to petitioner at the time of his original petition.'" *Patterson*, 36 F. Supp. 2d at 320 (citing *Hoke v. Netherland*, 92 F.3d 1350, 1354 n.1 (4th Cir. 1996) and Va. Code § 8.01-654(B)(2)). As a result, a successive petition can still be properly

filed in Virginia and trigger the tolling provisions of section 2244(d)(2) even though the petition is ultimately denied for failure to comply with Virginia Code § 8.01-654(B)(2). *Id.* at 319–20.

In an unpublished opinion, the Fourth Circuit held that "[a] state application is properly filed if it complies with the state procedural requirements for successive collateral attacks on a conviction, such as timeliness and proper place of filing," and "[i]t is unnecessary for a federal court to examine the merits of the state application or to determine whether a procedural bar is applicable." *McSheffrey v. Angelone*, 172 F.3d 863, 1999 WL 89403, at *2 (4th Cir. 1999) (citing *Lovasz*, 134 F.3d at 148–49). The Fourth Circuit, finding that the successive state petition in *McSheffrey* was properly filed and tolled the federal statute of limitations, vacated the district court's dismissal of the federal petition as untimely and remanded for further consideration. *Id.* at *1–2; *see also Austin v. Johnson*, No. 2:08cv135, 2009 WL 260482 (E.D. Va. Feb. 2, 2009) (finding a second, successive petition for state habeas relief was "properly filed" and tolled the federal limitations period pursuant to section 2244(d)(2)); *but see Cannady v. Johnson*, No. 1:10cv505, 2010 WL 5300852, at *1 n.1 (E.D. Va. Dec. 20, 2010) (noting that the successive petition was not properly filed because "Virginia law does not allow for successive habeas petitions," but concluding that the federal petition would still be untimely even if the second petition was considered properly filed).

The Court finds Jefferson's second state petition was properly filed within the meaning of section 2254(d)(2), and tolled his federal limitations period from the date the second petition was filed, on July 24, 2015, until the Supreme Court of Virginia dismissed and refused the petition on December 1, 2016. The 202 days remaining in Jefferson's federal limitations period began to run on December 1, 2016, and would not expire until June 21, 2017. Accordingly, Jefferson's

federal petition, which was placed in the prison mailing system on September 12, 2016, was timely filed.

**B.    Jefferson's petition is procedurally barred from federal review.**

Before addressing the merits of the habeas petition, the Court must confirm that Jefferson exhausted his remedies in state court, *see* 28 U.S.C. § 2254(b), and that the claims were not procedurally defaulted in state court. *See Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998). The exhaustion doctrine ensures that state courts have a meaningful opportunity to consider allegations of constitutional violations before presentation of such claims to a federal court. *Rose v. Lundy*, 455 U.S. 509, 515 (1982).  The exhaustion requirement is satisfied when the "essential legal theories and factual allegations advanced in federal court [are] the same as those advanced at least once to the highest state court." *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991).  Exhaustion may be achieved either through direct appeal or in post-conviction proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Brown v. Allen*, 344 U.S. 443, 447 (1953)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).  Under this doctrine, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)).  A state procedural rule is adequate if it is "regularly or consistently applied by the state courts." *McNeill v. Polk*, 476 F.3d 206, 211 (4th Cir. 2007) (citing *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)).  A state procedural

rule is independent "if it does not depend on a federal constitutional ruling." *Id.* (citing *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)).

A petitioner may overcome procedural default and obtain federal merits review, however, if he can "demonstrate cause and prejudice for the default or demonstrate that failure to review the claims will result in a fundamental miscarriage of justice." *Edwards v. Johnson*, No. 2:10cv339, 2010 WL 5825427, at *3 (E.D. Va. Dec. 15, 2010) (citing *Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)). The cause requirement compels a petitioner to demonstrate that "'some objective factor external to the defense impeded [his] efforts' to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To establish prejudice, a petitioner must also establish that any errors at trial "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Similarly, a petitioner may avail himself of the "fundamental miscarriage of justice" exception by proffering new, reliable evidence sufficient to support a claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 314–15, 324 (1995); *see also United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999) ("[I]n order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence.").

### 1. The state court dismissed Jefferson's habeas petition on procedural grounds.

Jefferson raised the claims contained in his federal petition for a writ of habeas corpus in the Supreme Court of Virginia in his second petition for a writ of habeas corpus, but the claims were denied and dismissed based on state procedural rules. *Jefferson v. Dir., Dept. of Corr.*, Record No. 160361 (Va. Dec. 1, 2016). Therefore, Jefferson's federal petition is procedurally

barred from federal review.

The Supreme Court of Virginia dismissed assignments of error 2, 5, and 6, which coincide with Jefferson's federal grounds 2, 5, and 6. *Jefferson v. Dir., Dept. of Corr.*, Record No. 160361 (Va. Dec. 1, 2016). These three assignments of error were dismissed pursuant to Rule 5:17(c)(1)(iii) of the Rules of the Supreme Court of Virginia[6] because they did "not address the circuit court's rulings in *Darryl Lamont Jefferson v. Director, Department of Corr.*, Circuit Court Case No. CL15-3079-1" from which Jefferson sought an appeal. *Jefferson v. Dir., Dept. of Corr.*, Record No. 160361 (Va. Dec. 1, 2016). The Fourth Circuit has consistently found Rule 5:17 of the Rules of the Supreme Court of Virginia to be an independent and adequate state bar to federal review. *See Hedrick v. True*, 443 F.3d 342, 360 (4th Cir. 2006); *Mueller v. Angelone*, 181 F.3d 557, 584 (4th Cir. 1999); *Yeatts v. Angelone*, 166 F.3d 255, 264 (4th Cir. 1999); *see also O'Dell v. Netherland*, 95 F.3d 1214, 1241 (4th Cir. 1996) ("[W]henever a procedural rule is derived from state statutes and supreme court rules, as this one is, the rule is necessarily 'firmly established.'").

The Supreme Court of Virginia summarily refused the appeal of assignments of error 1, 3, and 4, which coincide with Jefferson's federal grounds 1, 3, and 4. The Court will "look through" the Supreme Court of Virginia's refusal of Jefferson's state habeas petition for appeal

---

[6] Rule 5:17(c)(1)(iii) of the Rules of the Supreme Court of Virginia provides,

> [a]n assignment of error that does not address the findings or rulings in the trial court or other tribunal from which an appeal is taken, or which merely states that the judgment or award is contrary to the law and the evidence, is not sufficient. An assignment of error in an appeal from the Court of Appeals to the Supreme Court which recites that 'the trial court erred' and specifies the errors in the trial court, will be sufficient so long as the Court of Appeals ruled upon the specific merits of the alleged trial court error and the error assigned in this Court is identical to that assigned in the Court of Appeals. If the assignments of error are insufficient, the petition for appeal shall be dismissed.

and evaluate the reasoned decision of the Circuit Court of the City of Richmond. *Grueninger v. Dir., Va. Dep't. of Corr.*, 813 F.3d 517, 525 (4th Cir. 2016); *see Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."). The circuit court denied and dismissed Jefferson's petition on December 3, 2015, finding his petition was successive and barred by Virginia Code § 8.01-654(B)(2). *Jefferson v. Dir., Dept. of Corr.*, No. CL15-3079-1 (Va. Cir. Ct. Dec. 3, 2015). Section 8.01-654(B)(2) is an adequate and independent state ground for dismissal. *See Mackall v. Angelone*, 131 F.3d 442, 446 (4th Cir. 1997) (collecting cases and stating, "we have held on numerous occasions that the procedural default rule set forth in § 8.01-654(B)(2) constitutes an adequate and independent state-law ground for decision").

The circuit court proceeded to address the merits of Jefferson's claims in the alternative. When a state court rules in the alternative that a claim is both procedurally defaulted and lacking merit, the federal court should apply the procedural bar on habeas review.

> Moreover, a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S. Ct. 183, 184, 80 L. Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, *Sykes* curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (emphasis in original) (referencing *Wainwright v. Sykes*, 433 U.S. 72 (1977)); *see also Ashe v. Styles*, 39 F.3d 80, 86 (4th Cir. 1994) (holding "where a state court both addresses the merits of the federal question but also invokes a state procedural bar that is adequate and independent of federal law as an independent ground for

decision, a federal court must accord respect to the state law ground for decision, even if it is convinced the treatment of federal law was incorrect."); *Bush v. Legursky*, 966 F.2d 897, 900 n.4 (4th Cir. 1992) (holding "[a] state ground to deny habeas relief need only be 'independent' and 'adequate'; it need not be exclusive"). Therefore, Jefferson's claims are procedurally barred from federal habeas review absent a showing of cause and prejudice or a miscarriage of justice.

### 2.     Jefferson has not shown cause and prejudice to overcome procedural default.

In order to demonstrate cause, that is, "some objective factor external to the defense impeded [his] efforts to raise the claim in state court at the appropriate time," *Breard*, 134 F.3d at 619 (quotations and citation omitted), Jefferson argues that the Circuit Court of the City of Richmond did not have jurisdiction over his first petition, which was premature, improper, and incomplete. Jefferson's assertion, that the state court did not have jurisdiction over his first petition that was filed during his direct appeal, is incorrect. *See* ECF No. 1 at 10, 45, 54. In Virginia, a petition for a writ of habeas corpus can proceed simultaneously with a direct appeal. *See Sigmon v. Dir. of Dept. of Corr.*, 739 S.E.2d 905, 908 (Va. 2013).

Similarly, Jefferson's claim that his first petition for a writ of habeas corpus filed with the circuit court was "void of the legal argument and necessary parts," and the circuit court improperly identified the form as a complete petition, lacks merit. *See* ECF No. 19 at 1 (Jefferson's January 5, 2017 letter to the Court). Jefferson states that a complete petition was filed after his direct appeal was completed, and argues that it was "improper procedure to divide the habeas corpus into two case[] number[s] because of different documents." *Id.* Jefferson's first state habeas petition consisted of an eight-page form petition, two and one-half pages of argument in support of the petition, and nine pages of exhibits. *Jefferson v. Commonwealth*, Case No. CL13-3143 (Va. Cir. Ct. July 16, 2013). The petition was not devoid of legal argument

or necessary parts.[7]   The circuit court dismissed Jefferson's petition, which asserted three ineffective assistance of counsel claims, in a nine-page order entered November 7, 2014, finding that "[n]one of Jefferson's ineffective counsel allegations satisfy the 'performance' or the 'prejudice' standard of review under *Strickland v. Washington*, 466 U.S. 668 (1984.)" *Jefferson v. Dir., Dept. of Corr.*, Case No. CL13-3143-1 (Va. Cir. Ct. Nov. 7, 2014).   Jefferson did not appeal the decision to the Supreme Court of Virginia.   Further, the suggestion that Jefferson's petition was improperly divided by the circuit court is belied by the fact that the second state habeas petition was filed over eight months after the court dismissed his first petition.[8]

Jefferson has failed to show that his first state habeas petition was incomplete or that the state court lacked jurisdiction to address the petition prior to the conclusion of Jefferson's direct appeals.   Accordingly, Jefferson has failed to prove cause sufficient to excuse his procedural default.

### 3.   Jefferson has not shown that the Court's failure to review his claims will result in a fundamental miscarriage of justice.

A petitioner may avail himself of the "fundamental miscarriage of justice" exception to the procedural default bar by proffering new, reliable evidence sufficient to support a claim of actual innocence. *Schlup*, 513 U.S. at 314–15, 324; *see also Mikalajunas*, 186 F.3d at 493 ("[I]n order to demonstrate that a miscarriage of justice would result from the refusal of the court to

---

[7] Virginia Code § 8.01-655 sets forth the "[f]orm and contents" of petitions for writs of habeas corpus, stating in pertinent part, "[e]very petition filed by a prisoner seeking a writ of habeas corpus must be filed on the form set forth" in the statute.   Jefferson used the correct form when filing his first habeas petition with the circuit court.

[8] The second petition asserted four ineffective assistance of counsel claims and a sufficiency of the evidence claim, and consisted of a five-page form, twelve pages of argument, and eleven pages of exhibits.

entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence.").

Jefferson asserts he is actually innocent of the murders, because he acted in self-defense. ECF No. 1 at 27, 53, 63. Specifically, Jefferson states that he did not know or have any prior contact with the "attackers," one of which "pin[ned] [Jefferson] to the ground during a violent assault upon his person and life," and that he acted in self-defense. ECF No. 1 at 53, 63. The new evidence Jefferson presents in support of his claim of actual innocence consists of the redacted incident report he received in January 2016 in response to a Freedom of Information Act ("FOIA") request, ECF No. 1 at 23–24, and the February 2017 affidavit of D'Ante Blackmon, which Jefferson filed with his motion to amend his petition. ECF No. 22 at 4.

Contrary to Jefferson's assertion, the incident report does not "indicate that there were additional uncalled witnesses" to the murders. ECF No. 1 at 51; *see also* ECF No. 1 at 23–24 (Incident Report). The incident report provides the following information: (1) the date, time and location of the homicide; (2) that there were two victims; (3) that three items of property were recovered; and (4) that "drugs" were recovered. ECF No. 1 at 23–24. Nothing contained in this incident report supports Jefferson's contention that there were "additional uncalled witnesses" to the murders. Moreover, nothing Jefferson has presented suggests that, if such witnesses could be called to testify, they would provide evidence of Jefferson's innocence.

In further support of his actual innocence claim, Jefferson submits the sworn and signed affidavit of D'Ante Blackmon ("Blackmon"), an inmate at the same correctional institution as Jefferson. ECF No. 22 at 4. Blackmon claims he witnessed one of the murders. *Id.* He states that the victims were "stalking residents and visitors" of the apartment building on the night of

the murders, both were "armed with guns," and they were "being very aggressive towards anyone in their path." *Id.* Blackmon further states:

> I opened the door to the lobby and that's when I heard gun shots. After the shots rang out[,] I s[aw] Mr. Darryl Jefferson being hit in the head with a gun. There was a tussle over the gun and Mr. Jefferson came out with the upper hand[.] [T]hat's when he shot on[e] of the two men. I ran back home after that.

*Id.* Blackmon's affidavit is insufficient to make a credible showing of Jefferson's actual innocence. First, the affidavit is of questionable reliability. Although the affidavit is signed under the penalty of perjury in the presence of a notary public, the fact that Blackmon is an inmate at the same correctional facility as petitioner "'call[s] into question' the affidavit's reliability.'" *Fentress v. Clarke*, No. 1:15cv965, 2016 WL 4118916, at *4 (E.D. Va. July 28, 2016) (quoting *Milton v. Sec'y, Dep't of Corr.*, 347 F. App'x 528, 531 (11th Cir. 2009)).

Second, the assertion that Jefferson had been struck by one of the Phillips brothers was presented to the jury. In opening statements, defense counsel asserted:

> And without provocation, without notice, without any explanation, Ahmad Phillips strikes Mr. Jefferson in the face and he goes to the ground. And he strikes him in the face not with his hand but with his gun. Ahmad Phillips hits Mr. Jefferson with his gun and the gun drops to the ground.

Trial Tr. 57. At least two pieces of evidence tend to support that these claims were offered at trial. First, Ahmad's striking of Jefferson was addressed during the video of Jefferson's statements to police. Second, during defense counsel's cross-examination, Detective Bayne indicated that persons other than Trent said that one of the Phillips brothers had struck Jefferson first. Trial Tr. 154 ("Q[uestion:] Statements about -- statements saying that one of the Phillips men had struck Mr. Jefferson first did you have that from sources other than Mr. Trent? A[nswer:] That was from a source other than Mr. Trent.") Thus, in these critical aspects, the Blackmon affidavit is cumulative of evidence offered at trial.

19

Third, other evidence presented at trial conflicts with Jefferson's claim that he acted in self-defense. Lauren Bowles testified that the Phillips brothers only had one gun, which Ahkeem was carrying. Trial Tr. 86:16–23. Detective Provost, who documented the crime scene on the night of the murders, testified that Ahkeem's gun was found beneath the brothers' bodies[9] and the gun had never been fired. Trial Tr. 87:15–88:2, 99:24–100:8, 102:22–103:7. More importantly, the trial testimony showed that, regardless of the initial altercation between Jefferson and the Phillips brothers, the end result was multiple lethal gunshot wounds to each brother, persuasive evidence that they were not shot in self-defense. The medical examiner testified that Ahmad Phillips suffered eight gunshot wounds: two to the head, two to the neck, two to the upper arms, one to the pelvis, and one to the leg. Trial Tr. 128:24–129:15, 130:2–8. The two gunshot wounds to the head and one of the gunshot wounds to the neck were lethal injuries that would have caused death. Trial Tr. 130:9–21, 131:9–16. The shot to the leg "fractured the two major bones in [the] lower leg" and "Mr. Phillips would not have been able to bear weight on that leg." Trial Tr. 132:20–133:7.

The medical examiner further testified that Ahkeem Phillips suffered five gunshot wounds: two to the head, one to the torso, and one to each leg. Trial Tr. 134:2–8, 134:22–135:2. The two shots to the head and one shot to the torso were lethal injuries. Trial Tr. 134:9–21. Further, the shot to the left leg fractured the femur, and "would have caused an inability to bear weight on that leg." Trial Tr. 134:22–135:11. The evidence of multiple gunshot wounds to both brothers undermines Jefferson's assertion that he acted in self-defense. Also, Blackmon's

---

[9] Detective Provost confused the brothers' names during his testimony. He first testified that, when he arrived at the scene, Ahmad had been taken away and Ahkeem was lying dead on the sidewalk. Trial Tr. 99:24–100:3. He then testified about a photograph he took of the scene, and states "Ahmad is laying face down, and just underneath of him right here is a 9 millimeter pistol." Trial Tr. 100:5–8.

affidavit, which suggest he fled the scene before the shooting concluded, adds little to Jefferson's trial claims that the multiple gunshots were fired in self-defense.

The incident report and Blackmon's affidavit fail to demonstrate by clear and convincing evidence that Jefferson was actually innocent of two counts of first degree murder and two counts of use of a firearm in the commission of a felony, and the fundamental miscarriage of justice exception does not apply. Therefore, procedural default bars federal review of Jefferson's petition, and the Court recommends that the petition be DISMISSED.

## C.   Evidentiary Hearing

Jefferson requests an evidentiary hearing. ECF No. 1 at 15, 53, 62. The Court "may grant an evidentiary hearing in a § 2254 case only where the petitioner has 'allege[d] additional facts that, if true, would entitle him to relief' and has 'establish[ed] one of the six factors set forth in *Townsend v. Sain,* 372 U.S. 293, 312, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963).'"[10] *Robinson v. Polk,* 438 F.3d 350, 368 (4th Cir. 2006) (quoting *Fullwood v. Lee,* 290 F.3d 663, 681 (4th Cir. 2002)). As discussed above, Jefferson has failed to allege additional facts that would entitle him to relief. Accordingly, Jefferson's request for an evidentiary hearing is DENIED.

---

[10] Those six factors are: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing. *Townsend,* 372 U.S. at 313.

## III.  RECOMMENDATION

Jefferson's federal habeas petition is barred from federal review due to procedural default in the state court.  Accordingly, the Court RECOMMENDS that respondent's motion to dismiss, ECF No. 12, be GRANTED, and the petition for a writ of habeas corpus, ECF No. 1, as amended, ECF No. 22, be DENIED and DISMISSED WITH PREJUDICE.

## IV.  REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.  *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.  A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court

based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
July 5, 2017